Barker, J.
The plaintiff is a foreign corporation engaged in the manufactuture of furniture, and sold the property in question to Charles H. Thorp, a merchant doing business in Canandaigua, this state. Thereafter the same was shipped by the plaintiff by railroad consigned to Thorp, and while at the railroad station the defendant seized the same as the property of Thorp. The plaintiff commenced the action for the purpose of regaining possession of the goods, claiming that the title never passed to Thorp, for the reason that he was guilty of making fraudulent representations as to his financial condition at the time the purchase was made, which induced the plaintiff to sell the goods upon credit, and that Thorp intended to cheat the plaintiff out of the value of the goods, the purchase price of which was $222. The plaintiff’s salesman, being a stranger to Thorp, called at his store in Canandaigua, on the 13th of March, 1885, and received an order for the goods, for which a credit was given.
The plaintiff’s salesman, as a witness, testified that Thorpstated to him that he was worth, above all liabilities, the Sum of three or four thousand dollars, and that all the-goods then in the store belonged to him free of incumbrance; that all the debts he owed he owed to James Shay, who was then present and to whom the salesman was introduced by Thorp. It appears by the proofs that at that time Thorp was indebted to Shay in the sum of $2,800, and that the latter was an indorser upon his paper for. about $3,000, and for his security Shay held mortgages-upon the goods, the same also being on file in the proper town clerk’s office. It does not appear that at that time Thorp owed other debts than those which have been men - tioned—Thayer, $2,100; McICetchnie, $165.
We think the evidence fairly tends to show that the stock of goods on hand at the time of the purchase from the plaintiff was of a value equal to the indebtedness which Thorp then owed. Afterwards, and on the 24th of- April, Thorp’s indebtedness to Shay being for the sum of $5,000, including the said indorsements, the latter purchased the goods in the store, and in payment therein discharged the mortgages and assumed the indebtedness for which her was liable as indorser, and paid Thorp $1,500 in cash. *777 The evidence fairly established that the statement of Thorp that he was worth three or four thousand dollars, above his indebtedness, and that he owned the property m the store free from all incumbrances, was false and untrue, and that his entire property and assets at that time was no greater than the amount of his liabilities; and that the plaintiff was induced to make the sale by reason of such statements. The evidence bearing on these questions was not disputed, but to entitle the plaintiff to repudiate the sale and to reclaim the property, it was also necessary for it to establish as a fact that Thorp made the misrepresentations for the purpose of cheating and defrauding the plaintiff. As the verdict was for the defendant, we are to assume that the justice failed to find a fraudulent intention on the part of Thorp in making the misrepresentations as to his financial condition.
The counsel for the appellant contends, that as the representations related to Thorp’s financial ability, and they were proven to be false by undisputed evidence, the justice should have found as a fact that he intended to cheat and defraud the plaintiff.
Assuming that a case might be supposed, in which the evidence of fraud would be so clear and conclusive that the court might set aside a verdict of a jury, or the finding of a justice, as against the weight of evidence on the question of fraudulent intent, yet we are of the opinion that this is not such a case. The question of fraudulent intent in cases of this character is one of fact, and is generally deducible from a series of other facts and circumstances connected with the transaction, which ordinarily indicate an intention on the part of the purchaser to cheat and defraud the seller out of his property. Stitt v. Little et al., 63 N. Y., 427; Meyer v. Amidon, 45 id., 169; Oberlander v. Spiess, id., 175.
The question of fraud is always one of fact and not of- law. To establish fraudulent intent in a particular instance, the integrity of accused party must be attacked and broken down, and it must be shown that a deceitful purpose actuated him in concluding the agreement. There are some circumstances in this case which might well lead the justice to the conclusion that Thorp, although he misstated his financial condition, had no intention of cheating the plaintiff. The amount of goods purchased was small, and if they had been received before he sold out his stock of goods to Shay, they would not have largely added to their value. The evidence fairly tends to establish that if all of the property which he had on hand at the time he made the purchase had been prudently and carefully managed, it *778 could have been converted into money sufficient to have paid his indebtedness in full. While the justice may well have found that Thorp, at the time he closed out his busi • ness and conveyed all his property to Shay, with intent to cheat and defraud the plaintiff, it does not necessarily follow that he had formed such a purpose at the time he purchased these goods. As bearing upon the defendant’s position, that Thorp had no intent to deceive the plaintiff as to his financial ability there is the circumstance, of much significance, that he introduced the plaintiff’s agent to his principal debtor, from whom the salesman could have readily ascertained Thorp’s true financial condition. If Thorp was solvent at the time of the purchase of the goods, as the evidence tends to show; then the magistrate’s conclusion, that the same was made without any fraudulent purpose, is sustained by a very significant circumstance. We, therefore, must hold that the conclusion of the magistrate, that there was no fraud in the transaction, is con elusive upon the plaintiff.
Some objections were made by the plaintiff to the reception of evidence, but as no point is made in the brief that the rulings were erroneous, and we do not readily discover that they were, the judgment should be affirmed.
All concur.